**FLORES et al. v. DE GARZA et al.**

No. 8414.

Court of Civil Appeals of Texas. San Antonio.
April 23, 1930.

Rehearing Denied May 14, 1930.

Hill & Hill, of Laredo, and Arnold & Cozby, of San Antonio, for appellants.

W. W. Winslow and Gordon Gibson, both of Laredo, for appellees.

COBBS, J.

Appellants sued appellees to recover a judgment against the appellees for the title to

2,800 acres of land, subject to the life estate therein of Eulalia Dominguez de Flores, and subject to the right of actual possession of said land by appellees, as the vendees of Eulalia Dominguez de Flores during her lifetime, with remainder to the appellants after her death, under the terms of the will of the original Estanislao Flores, deceased, who was the foster grandfather of appellants. Appellants did not seek to recover judgment for the present actual possession of the land, but merely to recover judgment for the title to the land, and to fix and establish their title thereto, by decree of the court, as remaindermen, subject to appellees' right to possession thereof, during the existence of said life estate.

Estanislao Flores and Leonarda Flores, foster grandparents of plaintiffs and foster parents of the above-mentioned Eulalia Dominguez de Flores, in their joint lifetime owned, in community much personal property and some 13,786 acres of land, including the 9,259-acre tract of which the 2,800-acre tract in controversy was a part. Estanislao, on his death in 1895, left a written will, duly probated, by which he bequeathed all his property, real and personal, to his widow, Leonarda, for life, and at her death to be equally divided between Filemon Flores, father of appellants, and Eulalia Dominguez (whom plaintiffs claim to be the cestui qui vie, on whose life, plaintiffs say, defendants' title depends). The will further provides that, "in case either of the beneficiaries should die without issue, then the whole of the estate shall go to the survivor or his or her issue."

In 1912 Leonarda died leaving a written will, duly probated, by which she bequeathed her community interest in the 9,259-acre tract and other land to said Filemon Flores, leaving to him also two-thirds of her live stock and making him residuary legatee of her personal estate, while the remaining one-third of the live stock was left to said Eulalia. Filemon was appointed independent executor of her estate without bond.

In 1916, Eulalia filed suit against Filemon for partition of the 13,786.7 acres of land, including the 9,259-acre tract out of which the 2,800-acre tract in controversy later was carved. She alleged that she and Filemon were joint owners of those 13,786.7 acres in equal shares.

At the same time that this partition suit was pending, other matters were in dispute between Filemon and Eulalia relating to moneys claimed by Eulalia as due her by Filemon and cattle held in possession by Filemon and claimed by Eulalia.

While the partition suit and the other disputes between Filemon and Eulalia were pending, these two entered into a written agreement between themselves, by which it was declared that "all matters in controversy and in suit between said Filemon Flores and Eulalia Dominguez are hereby settled, as follows:"

Filemon paid to Eulalia $110 in full of all monetary claims, delivered her cattle, and agreed to deed to her the specific 2,800 acres of land in controversy, and Eulalia surrendered and canceled all other claims and accepted the money, land and cattle "in full satisfaction of any and all claims of every kind and character which she may have in the property involved in said suit or against said Filemon Flores, and upon delivery to her of the deed to said 2800 acres she will absolutely release and quit-claim to said Filemon Flores any and all right, title and interest she may have in and to any and all of the balance of said land, and receipt said Filemon Flores in full for any and all claims of any kind and character she may have against him."

At the date of this agreement Filemon Flores owned in fee one-half of the 9,259-acre tract (and other land) under the will of Leonarda and one-fourth of this and other land in fee under the will of Estanislao, which latter title was absolute also.

Under this agreement Filemon paid the money and delivered the cattle. The 2,800-acre tract was surveyed and deeds prepared, and Eulalia tendered her quitclaim and release. But Filemon refused to complete the compromise. Eulalia then filed an amended petition in the pending suit, and, instead of partition, sought specific performance of the compromise agreement.

The agreement was enforced by the court over Filemon's contention, then made, that Eulalia should have a title for her life only, and fee title was vested by the court in Eulalia.

By warranty deed Eulalia sold the 2,800-acres to one Alvaro Pena, who in turn sold and warranted the title to Martiniano Garza. Appellees are the heirs of Martiniano Garza. Eulalia is still living.

Filemon Flores died in 1923, and appellants are his heirs.

Appellants now claim that the judgment in the suit of Eulalia against Filemon, in which the compromise agreement was enforced, was nothing but a decree of partition, and that the only title Eulalia held to the 2,800 acres was under the will of Estanislao, and that, in the possible event of her death without issue, the fee she took would be defeated under the clause of Estanislao's will providing that, "in case either of the beneficiaries should die without issue, then the whole of the estate shall go to the survivor or his or her issue," and that plaintiffs then, in such possible event of her death without issue, will take the interest she inherited under the will of Estanislao, which they claim is now represented by the 2,800 acres in controversy.

In 1916 Eulalia was suing Filemon to recover a half interest in 13,786.7 acres of land, including the 9,259-acre tract. She was also claiming that Filemon owed her certain sums of money and was detaining from her certain cattle, her property. These latter two items were not involved in the partition suit. Concededly at this time Filemon (plaintiffs' ancestor) owned the fee-simple title to an undivided half of the 9,259-acre tract (out of which the 2,800-acre tract in controversy was carved), and owned another quarter in fee subject to defeasance, but which in fact never was defeated and became absolute, so that Filemon then owned absolutely 6,944 acres out of this 9,259-acre tract. Filemon, at the same time, held three-fourths in fee in another tract of 2,608 and three tracts of 640 acres each, in all of which Eulalia claimed an interest, a total of 13,786.7 acres of land.

In this state of affairs Filemon in compromise settlement agreed to give Eulalia 2,-800 acres in fee simple out of this 9,259-acre tract. He tried to avoid carrying out the compromise, but the court compelled him. He appealed, and this court affirmed the decree. So Filemon was bound to deliver to Eulalia and did deliver to her fee title to 2,800 acres out of the 9,259-acre tract. He owned far more than 2,800 acres therein at that time, and Eulalia then under decree of the district court affirmed by this court became vested with title in fee simple to 2,800 acres out of the tract, and Filemon was divested of title to a like amount of acreage.

The case was tried without a jury, and judgment was rendered for appellees by the court. The court made the following findings and conclusions:

"Findings of Fact.

"I find that Estanislao Flores and Leonarda Benavides Cuellar de Flores, his wife, owned a large amount of community property, including a certain tract of 9,259 acres, of which the 2,800 acres of land involved in this suit is a part, and other land.

"I find that said Estanislao Flores died on October 4th, 1895, and left a written will, which was duly probated, and by which said will he bequeathed his property as follows, omitting formal and irrelevant parts:

"Paragraph Three, I give and bequeath to my beloved wife, Leonarda Benavides Cuellar all my property both real and personal of whatever nature and description, with all and singular the rights, members and appurtenances to the same in any manner belonging, to have and to hold during her natural life and at her death to be equally divided between Filemon Flores, son of Cesario Flores, and Eulalia Dominguez, daughter of Raymundo Dominguez, children whom we raised and consider as our own.

"Paragraph Four: In case either of the beneficiaries should die without issue, then the whole of the estate shall go to the survivor or his or her issue.

"I find that said Leonarda Benavides Cuellar de Flores never disposed of her community interest in said tract of 9,259 acres and at her death in the year 1912 left a written will which was duly probated. By the terms of her said will she left all of her property, separate and community, to her foster son, the said Filemon Flores.

"I find that in the year 1917 said Eulalia Dominguez (then the wife of Federico Flores) brought a partition suit against said Filemon Flores and that while said suit was pending other matters were in dispute between said Eulalia Dominguez and Filemon Flores.

"I find that while said suit was pending an agreement for settlement of all matters in dispute between said parties was made by which, inter alia, said Filemon agreed to convey to said Eulalia Dominguez the specific 2800 acres in question in fee which agreement was specifically enforced by this Court in Cause No. 4112 and the fee title to said 2800 acres vested in Eulalia Dominguez de Flores, which decree was affirmed by the Court of Civil Appeals, holding that she was entitled to the fee simple estate in the 2800 acres (200 S. W. 1157).

"I find that on May 6th, 1918, by Warranty Deed of that date the said Eulalia Dominguez de Flores joined by her husband, Federico Flores, sold and conveyed said 2800 acres to one Alvaro Pena.

"I find that on the 3rd day of June, 1918, the said Alvaro Pena, by Warranty Deed of that date sold and conveyed said 2800 acres of land to Martiniano Garza.

"I find that the plaintiffs in this case are the sole and only heirs at law of the said Filemon Flores, deceased.

"I find that the defendants in this case are the sole and only heirs at law of said Martiniano Garza, deceased.

"Conclusions of Law.

"I conclude as a matter of law under the above facts that the defendants own the 2800 acres in controversy in fee simple."

The only question we shall consider in this case is whether or not the matters involved here have been passed on and are res adjudicata. Since the decree Eulalia and her vendees have claimed title under and by virtue of that decree, which divested title to this particular 2,800 acres out of Filemon. The court finds that Leonarda never disposed of her half community interest in the 9,259-acre tract, and, at her death in 1912, left this half interest to Filemon, so that at the date of the decree Filemon owned 4,629.5 acres in fee under Leonarda's will. The court also found

Filemon agreed to give Eulalia 2,800 acres in fee. This agreement was specifically enforced, and the 2,800 acres vested in Eulalia.

The findings of fact show that the court considered the will, but did not, of course, construe it. It sufficiently appears that there was a bona fide dispute between Eulalia and Filemon as to their respective interests in 13,787 acres of land and as to certain moneys and cattle claimed by Eulalia against Filemon.

In the suit of Flores v. Flores (Tex. Civ. App.) 200 S. W. 1157, 1159, this court said the evidence "shows that defendant [Filemon] agreed to 'deed' Mrs. Flores [Eulalia] 2,800 acres of land, and upon the delivery of such 'deed' to her she would release and quitclaim to him any and all right, title, or interest she had in and to all of the balance of said land. If it had been intended that the title to the fee of the 2,800 acres should be determined by the wills, the instrument would not have constituted such a settlement as it purported to constitute. * * * We believe the court was correct in holding that under the agreement Mrs. Flores was entitled to the fee-simple estate in the 2,800 acres of land."

The findings made by the trial court in this case are fully supported by the testimony.

We do not discuss any more of the assignments of error or propositions of law. We regard them foreign to the real and true issues involved, and they are overruled.

Finding no errors committed that should call for a reversal, the judgment is affirmed.